Stephen C. Woodruff
Attorney and Counselor at Law
3169 Nasa Place, Susupe Village
P. O. Box 500770
Saipan, MP 96950
Tel.:   (670) 989-2797
Email: scwlaw.spn@gmail.com

Attorney for Plaintiff

FILED
Clerk
District Court

SEP 2 2 2025

for the Northern Mariana Islands
By _____ JP
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **VIRAY ENTERPRISES INC.,**<br><br>**Plaintiff,**<br><br>-v-<br><br>**KRISTI NOEM, in her Official Capacity as Secretary of the United States Department of Homeland Security (DHS), PAM BONDI, in her Official Capacity as Attorney General of the United States, JOSEPH B. EDLOW, in his Official Capacity as Director of U.S. Citizenship and Immigration Services (USCIS), JOHN M. ALLEN, in his Official Capacity as SCOPS Deputy Associate Director of Adjudications of the California Service Center, USCIS/DHS, the United States Immigration and Citizenship Service, the U.S. Department of Homeland Security, and the United States of America,**<br><br>**Defendants.** | **Civil Action No. 25-**<br>**CV - 2 5 - 0 0 0 1 1**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 701 et seq.** |

COMES NOW plaintiff and for its Complaint, alleges as follows:

-1-

# I.

## INTRODUCTION

1.     As an incident of national sovereignty, the United State of America exercises the immigration power – that is, the power to control the entry, removal, and conditions of presence of noncitizens within the territory of the United States.  Prior to November 28, 2009, this authority was, pursuant to the Commonwealth Covenant[1] for the most part delegated to the government of the Commonwealth of the Northern Mariana Islands (CNMI) with respect to the territorial limits of the CNMI.  Consistent with Covenant Section 503, this delegation was repealed by Title VII of the Consolidated Natural Resources Act of 2008 ("CNRA"), Pub. L. 110-229, 48 U.S.C. § 1806, which contained a number of transition provisions to address the complexities of superseding the CNMI immigration regime with the full range of the immigration laws of the United States while at the same time addressing the unique needs and circumstances of the CNMI.  Central to this complaint is one of those transition provisions, federal administration of the CNMI-Only Transitional Worker Program, codified at 48 U.S.C. § 1806(d).

2.     Plaintiff brings this action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., for declaratory judgment and other relief pursuant to 28 U.S.C. § 2201 and 2202, for judicial review of the denial by USCIS of plaintiff's I-129CW petition for renewal of the CW-1 permit of JDA[2] (and concomitant extension of stay), and the subsequent dismissal of plaintiff's

---

[1]  Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Commonwealth Covenant"), *approved and given effect as law* Pub. L. 94-241, 90 Stat. 263, *codified at* 48 U.S.C. § 1801.

[2]  Plaintiff's employee is identified by initials only to safeguard the privacy of the individual worker, given that noncitizen employees (or prospective employees) have no standing under 8 C.F.R. § 214.2(w) to petition for status or employment authorization in their own right, or to independently pursue access to remedies.

1  appeal of that denial to the USCIS Administrative Appeals Office, on the grounds that said

2  denial and dismissal were arbitrary, capricious, and based on misapplication of law.

## II.

### JURISDICTION AND VENUE

3.     Jurisdiction over this matter and defendants herein is vested in this court pursuant
to 5 U.S.C. § 701 & 702, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (declaratory
judgment), and 28 U.S.C. § 1651 (All Writs Act), in that Plaintiff has suffered legal wrong and is
adversely affected and aggrieved by denial of its CW-1 petition for renewal of JDA's CW-1 permit.

4.     Venue is invoked pursuant to 28 U.S.C. § 1391. Plaintiff is a CNMI corporation
organized and doing business in the CNMI, and Plaintiff seeks judicial review of agency action
depriving it of authorization to employ JDA and denying JDA authorization to work for Plaintiff
in the CNMI.

## III.

### PARTIES

5.     Plaintiff **VIRAY ENTERPRISES INC.** is a corporation organized under the
laws of the Commonwealth of the Northern Mariana Islands (CNMI) and lawfully doing
business in the CNMI.

6.     Defendant **KRISTI NOEM** is sued in her official capacity as Secretary of the
United States Department of Homeland of Homeland Security.  In that capacity, she has
responsibility for the administration and enforcement of the immigration laws of the United
States pursuant to 8 U.S.C. 1103(a)(1)-(7).

7.     Defendant **PAM BONDI** is sued in her capacity as Attorney General of the
United States.  In that capacity, she has authority pursuant to 8 U.S.C. 1103(a)(1) to issue
controlling determinations and rulings on questions of law binding on the Department of

1    Homeland Security and the Department of State relative to the administration and enforcement
2    of the immigration laws of the United States.

3        8.      Defendant **JOSEPH B. EDLOW** sued in his official capacity as Director of
4    United States Immigration and Citizenship Services (USCIS). In that capacity, he has
5    responsibility for the administration and enforcement of the immigration laws of the United
6    States pursuant to delegation of authority by the Secretary of Homeland Security pursuant to
7    8 C.F.R. § 2.1.

8        9.      Defendant **JOHN M. ALLEN** is sued in his official capacity as SCOPS Deputy
9    Associate Director of Adjudications at the USCIS California Service Center. In that capacity, he
10   denied plaintiff's CW-1 petition to renew its employment of JDA and extend his authorized stay
11   in the United States.

12       10.     Defendant **UNITED STATES CITIZENSHIP AND IMMIGRATION**
13   **SERVICES** is a component of the Department of Homeland Security and agency of the United
14   States with authority to adjudication CW-1 petitions.

15       11.     Defendant **U.S. DEPARTMENT OF HOMELAND SECURITY** is an agency
16   of the United States charged with authority to administer and enforce the immigration laws of the
17   United States.

18       12.     Defendant **UNITED STATES OF AMERICA** is a sovereign nation whose
19   agencies have inflicted legal wrong upon plaintiff.

20
                                        **IV.**
21
                              **FACTUAL ALLEGATIONS**
22

23       13.     Plaintiff has employed JDA since 2008, before the advent of federal
24   administration of immigration in the CNMI. JDA was a worker "lawfully present pursuant to the
25   immigration laws of the Commonwealth" as of November 28, 2009, and hence covered by the

1  protections of 48 U.S.C. § 1806(e)(1). He has continuously maintained his immigration status
2  thereafter through petitions for grant and renewal of his CW-1 status made by plaintiff on his
3  behalf.

4      14.    The beneficiary of plaintiff's CW-1 petitions, JDA, was first petitioned by
5  plaintiff on November 30, 2011, under file number WAC1204051286. The petition was
6  approved on  July 30, 2012, for employment from July 27, 2012 to July 26, 2013.

7      15.    Plaintiff on May 30, 2014, timely petitioned for JDA's renewal, under file number
8  WAC1317050069. This petition was approved on July 8, 2013, for employment from July 27,
9  2013 to July 26, 2014.

10     16.    Plaintiff on July 2, 2014, again timely petitioned for JDA's renewal, under file
11  number WAC1419250733. This petition was approved on August 18, 2014, for employment
12  from July 27, 2014 to July 26, 2015.

13     17.    Again, plaintiff on May 18, 2015, timely petitioned for JDA's renewal, under file
14  number WAC1516351185. This petition was approved on June 5, 2015, for employment from
15  July 27, 2015 to July 26, 2016.

16     18.    On July 12, 2016, plaintiff once again timely petitioned for JDA's renewal, under
17  file number WAC1620250386. This petition was approved on November 21, 2016, for
18  employment from November 17, 2016 to October 1, 2017, and specifying consular processing in
19  Manila, Philippines.

20     19.    Again plaintiff on April 3, 2017, timely petitioned for JDA's renewal, under file
21  number WAC1714153268. This petition was approved on June 28, 2017, for employment from
22  October 2, 2017 to October 1, 2018.

23     20.    On August 2, 2018, plaintiff once again timely filed for JDA's renewal, under file
24  number WAC1825350882. This petition was approved on September 3, 2018, for employment
25  from October 2, 2018 to October 1, 2019.

1    21.    Plaintiff again timely filed on September 5, 2019 for JDA's renewal, under file

2    number WAC1929050906. This petition was approved on November 1, 2019, for employment

3    from October 2, 2019 to October 1, 2020.

4    22.    Another timely renewal petition was filed by plaintiff for JDA on September 3

5    2020, under file number WAC2030250541. This petition was approved on October 8, 2020, for

6    employment from October 2, 2020 to October 1, 2021.

7    23.    Plaintiff timely filed a renewal petition for JDA on July 26, 2021, which was

8    assigned file number WAC2129751549. Because JDA was admitted in CW-1 status during

9    fiscal year 2015, and during every subsequent fiscal year beginning before July 24, 2018, and

10    thus qualifies as a long-term worker, 48 U.S.C. § 1806(d)(7)(B), the petition sought an extension

11    of stay of three years from October 2, 2021 to October 1, 2024.

12    **E-Verify and Previous Litigation**

13    24.    The Northern Mariana Islands U.S. Workforce Act of 2018, P. Law 115-218, 132

14    Stat. 1547 (2018), imposed, among other provisions relevant to this action, a requirement that

15    CNMI employers enroll in E-Verify and comply with the requirements of the E-Verify program.

16    Specifically, the Act added a requirement that CNMI employers be participants "in good

17    standing in the E-Verify program" to the other six previously established criteria by which the

18    Department of Homeland Security is charged with the responsibility to determine whether a

19    petitioner is or is not a "legitimate business" for purposes of employing CNMI-Only Transitional

20    Workers. 48 U.S.C. § 1806(d)(3)(D)(iv)(II)(ee).

21    25.    Plaintiff duly enrolled in E-Verify, receiving a Registration Confirmation

22    dated July 6, 2020. Despite good faith efforts to comply with the E-Verify requirement and

23    approval of petitions filed in 2020 for renewal of plaintiff's employees without difficulty,

24    plaintiff's timely renewal petition on behalf of JDA, filed on July 26, 2021, was denied on

25

1  January 27, 2022, claiming plaintiff was not a "legitimate business" due to purported failure to

2  comply with the E-Verify requirement.

3       26.    Plaintiff filed a timely motion to reopen and reconsider the denial with a form I-

4  290B on March 3, 2022.  On November 3, 2022, the USCIS California Service Center denied the

5  motion.  Accordingly, plaintiff filed Civil Action No. 22-00019 in this Court on December 22,

6  2022.  In response to the lawsuit, the California Service Center reopened the matter and granted

7  the petition, after which plaintiff voluntarily dismissed the lawsuit on January 27, 2023.

8  Petitioner thus was granted renewed CW-1 status from October 2, 2021 to October 1, 2024.

9  **The Instant Petition**

10       27.    On August 9, 2024, Plaintiff filed a timely renewal petition on behalf of JDA,

11  which USCIS lodged under file number SRC2426050264.  USCIS issued a Request for Evidence

12  (RFE) on September 18, 2024, suggesting that JDA did not qualify as a long-term worker

13  (despite USCIS having previously granted JDA a 3-year CW-1 permit) and thus could not

14  qualify for a CW-1 petition without first complying with the touchback provision of the Northern

15  Marianas Workforce Act of 2018.  Plaintiff submitted a timely response to the RFE on

16  November 8, 2024, maintaining that JDA did in fact qualify as a long-term worker.  On

17  February 18, 2025, the USCIS California Service Center, through Defendant ALLEN, denied the

18  petition.

19       28.    On the same date, February 18, 2025, the USCIS California Service Center,

20  likewise through Defendant ALLEN, denied JDA's extension of authorized stay.

21       29.    Defendant ALLEN issued these denials on USCIS California Service Center

22  letterhead in his capacity as "SCOPS Deputy Associate Director of Adjudications."  Plaintiff is

23  unaware of the actual scope of Defendant ALLEN's authority or the relationship between

24  SCOPS and the California Service Center.  SCOPS apparently is an acronym for "Service Center

25

1  Operations" but, again, the bureaucratic framework, scope of authority, and chain of command
2  are obscure.

3       30.    The basis stated for denial was that USCIS concluded that JDA "is ineligible to be
4  classified as a long-term CW-1 worker."  The reasoning purporting to support this conclusion
5  was that satisfaction of the statutory requirement of admission in each of fiscal years 2015 to
6  2018 to qualify as a long-term worker is determined based on the "approved validity start date"
7  and that a single approval cannot count in satisfaction of more than one fiscal year even though
8  the validity period of the approved petition begins in one fiscal year and ends in another.

9       31.    The "validity start date" test is not in the statute and is contrary to the plain
10  purpose and intent of the statute, which is to classify as long-term workers all those CW-1
11  workers who maintained continuous CW-1 status from fiscal year 2015 into fiscal year 2018.

12       32.    The validity start date test and the prescription against a single approval counting
13  against more than one fiscal year regardless of the period of validity are arbitrary and capricious
14  hypertechncial contrivances, designed not to give effect to the statutory purpose but to provide
15  excuse and pretext to deny a petition.

16       33.    On March 10, 2025, plaintiff filed a timely appeal to the Administrative Appeals
17  Office with a form I-290B.  The appeal was docketed under file number IOE0930650698.  On
18  July 28, 2025, the USCIS Administrative Appeals Office (AAO) dismissed the appeal,
19  maintaining that plaintiff had "not established that the Beneficiary qualifies as a long-term
20  worker under the applicable statute and regulations."

21       34.    The decision of the AAO is unsustainable and unsupported by fact or law.  The
22  only justification cited by the AAO to support the validity start date rule was that "CW-1
23  classification is subject to annual numerical limitation or 'cap' that limits the total number of
24  aliens who may be issued CW-1 visas or otherwise granted CW-1 status during a fiscal year."
25  The. AAO argument is a complete *non sequitur* unsupported in fact or law.  While it is true that

1  CW-1 approvals are subject to a cap, there is no evidence or reasoning to suggest that the cap

2  was in any way implicated by whether or not JDA was classified as a long-term worker.

3      35.    Indeed, there is no logical connection whatsoever between the cap on CW-1

4  workers and the long-term worker and touchback provisions of the Northern Mariana Islands

5  U.S. Workforce Act of 2018, Pub. L. 115-218, 132 Stat. 1547 (2018).  The cap is implicated only

6  when the number of permits presently being sought approaches the cap.  There is no evidence

7  that plaintiff's petition for JDA faced such a situation.  Moreover, enforcement of the cap is an

8  administrative responsibility of USCIS and has no relationship to the question of whether an

9  individual worker qualifies under the Workforce Act as a long-term worker.

10      36.    In the fiscal years used to determine qualification for long-term worker status,

11  there was not yet any long-term worker category.  Accordingly, it is logically impossible for

12  there to be any effect on enforcement of the cap as to those years by whether or not a worker is

13  credited for a given fiscal year for purposes of qualifying for long-term worker status.  As to the

14  current and future fiscal years, the impact of classification as a long-term worker is entirely

15  prospective and consequently requires nothing more than a simple accounting entry.

16      37.    The flawed and result-oriented reasoning of SCOPS and the AAO is further

17  evident in the fact that it disregards the historical fact that USCIS sometime during fiscal years

18  2016 and 2017 changed its practice in issuing CW-1 approvals to shift from validity dates

19  running from one fiscal year into another (often in the middle of the year) to validity periods

20  mostly coinciding with the fiscal year.

21      38.    The decision of the AAO also contends that the Congressional intent of the

22  Workforce Act is irrelevant because the "statute is clear on its face," but this plainly is not true.

23  The statute is clear on its face that there is to be a class of workers entitled to long-term worker

24  status who will be exempt from the new touchback requirement.  The clear intent of this

25  provision is to limit the adverse impact of the touchback requirement and thus support the

1  explicitly stated purpose of "maintaining the minimum number of non-U.S. workers to meet the

2  demands of the CNMI's economy." Neither the statute nor the regulation contain the test and

3  requirement relied upon to by SCOPS and the AAO to insist that JDA does not qualify as a long-

4  term worker. Neither does anything in the statute support the gloss contrived by SCOPS and

5  endorsed by AAO to deny the petition.

6          39.    JDA's long-term worker status was previously recognized by USCIS. SCOPS

7  acknowledged this but provided no reasoning in the denial supporting a conclusion that the

8  previous approval was due to material error. In dismissing the appeal and sustaining the denial,

9  AAO baldly declared that the prior determination "involved material error." The decisions

10 contain nothing demonstrating error, let alone materiality, in the prior decision. SCOPS and

11 AAO simply arrived at a desired result – denial of the petition – and concocted a putative

12 rationale to support it. Naked assertion that a previous determination "involved material error"

13 does not make it true. Neither is it sufficient to disregard the prior determination and impose a

14 contrary result.

15         40.    The decisions of SCOPS and AAO reflect a clear predisposition for denial of

16 petitions leading to formulation and articulation of pretexts or excuses to deny. This approach is

17 arbitrary, capricious, and contrary to due process of law. Long-term worker status is a benefit

18 conferred by the Workforce Act and, as an explicit carve out from the touchback requirement,

19 remedial in character. The SCOPS and AAO predisposition for denial plainly frustrates or

20 subverts the statutory language and Congressional intent.

21         41.    A true copy of the AAO decision dismissing the appeal from the denial decision is

22 annexed hereto as Exhibit 1.

23 \\

24 \\

25 \\

## V.

## CAUSES OF ACTION

**1.    First Cause of Action – Judicial Review of Agency Action, 5 U.S.C. § 701 et seq.**

42.    Plaintiff incorporates paragraphs 1 through 41 of this Complaint as if restated in full here.

43.    Plaintiff timely filed for renewal of CW-1 status of its employee, JDA, with a requested extension of stay of three years. JDA had previously been recognized by USCIS as a long-term worker under the Workforce Act

44.    Defendants arbitrarily and capriciously insisted that that JDA did not qualify as a long-term worker and on that basis denied the petition and dismissed plaintiff's appeal of the denial. There is no evidence of any material error in the initial recognition by USCIS of JDA as a long-term worker.

45.    The use of the term "admitted" in the Workforce Act refers to authorization for a CW-1 worker to stay and work in the CNMI and applies to the entire period of such authorization and not solely to the first day of such authorization.

46.    Plaintiff has suffered legal wrong, and has been adversely affected and is aggrieved, by Defendants' wrongful and erroneous denial of plaintiff's CW-1 petition, and by Defendants' failure to correct the erroneous and unjustified denial.

47.    Each defendant either acted or failed to act in a manner causing plaintiff's injury, or has the power to provide plaintiff with a remedy.

48.    The denial of plaintiff's CW-1 petition and dismissal of plaintiff's appeal directly or indirectly by Defendants was arbitrary, capricious, and based on an erroneous understanding and misapplication of applicable law.

**2.    Second Cause of Action – Equal Access to Justice Act, 28 U.S.C. § 2412**

49.    Plaintiff incorporates paragraphs 1 through 48 of this Complaint as if restated in full here.

50.    The position of Defendants in the underlying adjudications and in this matter (as applicable) was not substantially justified.

51.    Upon prevailing on the first cause of action, Plaintiff is entitled to an award of costs and attorney's fees under 28 U.S.C. § 2412.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.    For declaratory judgment setting aside the denial;

2.    For injunctive relief directing that defendants grant plaintiff's CW-1 petition and extend the authorized stay of JDA;

3.    For attorney's fees and costs; and

4.    For such other relief as is just and proper.

Dated this 16th day of September, 2025.

Respectfully submitted,

STEPHEN C. WOODRUFF
Attorney for Plaintiff



**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Administrative Appeals Office*
5900 Capital Gateway Drive, Mail Stop 2090
Camp Springs, MD 20588-0009

**U.S. Citizenship and Immigration Services**

ATTN FLORANTE VIRAY
PRESIDENT
VIRAY ENTERPRISES NC.
PO BOX 506287
SAIPAN MP 96950

DATE: JUL. 28, 2025

FILE #: SRC2426050264
I-290B RECEIPT #: IOE0930650698

IN RE:    Petitioner:    VIRAY ENTERPRISES INC.
          Beneficiary:

ON BEHALF OF PETITIONER:

STEPHEN C. WOODRUFF, ESQUIRE
WOODRUFF LAW OFFICE
PO BOX 500770
SAIPAN MP 96950

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case. If you believe we incorrectly decided your case, you may file a motion requesting us to reconsider our decision, reopen the proceeding, or both. The requirements for motions are located at 8 C.F.R. § 103.5. Motions must be filed on a Form I-290B, Notice of Appeal or Motion, **within 33 days of the date of this decision**. This time period includes three days added for service by mail.

The Form I-290B website (www.uscis.gov/i-290b) contains the latest information on fee, filing location, and other requirements. **Please do not mail any motions directly to the AAO.**

If you have any further questions about your case, please call the USCIS Contact Center at (800) 375-5283.

Sincerely,

Susan Dibbins
Chief, Administrative Appeals Office

# EXHIBIT "1"

 **U.S. Citizenship and Immigration Services**

**Non-Precedent Decision of the Administrative Appeals Office**

In Re: 38118738                                                    Date: JUL. 28, 2025

Appeal of Service Center Operations Decision

Form I-129CW, Petition for a CNMI-Only Nonimmigrant Transitional Worker

The Petitioner, which is engaged in automobile air conditioning repair and retail sale of air conditioning parts, seeks to continue the Beneficiary's temporary employment as a "Car Aircon Mechanic" and extend his status for period of three years under the CNMI-Only Transitional Worker (CW-1) nonimmigrant classification. *See* 48 U.S.C. § 1806(d). The CW-1 visa classification allows employers in the Commonwealth of the Northern Mariana Islands (CNMI) to apply for permission to temporarily employ foreign workers who are ineligible under other nonimmigrant worker categories.

Service Center Operations (SCOPS) denied the petition, concluding the record did not establish that the Beneficiary is eligible to be classified as a CW-1 long-term worker as defined in the statute and regulations. The matter is now before us on appeal pursuant to 8 C.F.R. § 103.3.

The Petitioner bears the burden of proof to demonstrate eligibility by a preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369, 375-76 (AAO 2010). We review the questions in this matter de novo. *Matter of Christo's, Inc.*, 26 I&N Dec. 537, 537 n.2 (AAO 2015). Upon de novo review, we will dismiss the appeal.

## I. LAW

Title 48 U.S.C. § 1806(d), as amended by the Northern Mariana Islands U.S. Workforce Act of 2018 (Workforce Act),[1] provides the statutory basis for the CW-1 classification. The statute includes the following provision at section 1806(d)(7)(B), creating a CW-1 sub-category of "long-term workers":

> An alien who was admitted to the Commonwealth as a [CW-1 nonimmigrant] during fiscal year 2015, and during every subsequent fiscal year beginning before July 24, 2018, may receive a permit for a Commonwealth Only Transitional Worker that is valid for a period that may not exceed 3 years and may be renewed for additional 3-year periods during the transition period.

---

[1] *See* Pub. L. 115-218, 132 Stat. 1547 (2018).

Under the implementing regulations for CW-1 transitional workers, as amended effective June 18, 2020,[2] a "long-term worker" is defined as an alien "who was admitted to the CNMI, or otherwise granted status, as a CW-1 nonimmigrant during fiscal year 2015, and during each of fiscal years 2016 through 2018." 8 C.F.R. § 214.2(w)(1)(viii).

A petition seeking to classify a beneficiary as a long-term worker must therefore be accompanied by evidence that he or she qualifies under the statutory and regulatory definitions. In addition, to qualify for an extension of stay, the petitioner must demonstrate that the beneficiary continuously maintained the terms and conditions of CW-1 status, remains admissible to the United States, and remains eligible for the CW-1 classification. *See* 8 C.F.R. § 214.2(w)(18).

## II. ANALYSIS

At issue on appeal is whether the Petitioner established that the Beneficiary qualifies as a long-term worker as defined in the statute and regulations.

The Petitioner indicated on the Form I-129CW, Petition for a CNMI-Only Transitional Worker, at Part 2, Item 6 that it was seeking a three-year extension of status for a long-term CW-1 worker and responded "Yes" where asked "did each worker continuously maintain CW-1 nonimmigrant status during the required fiscal years?"

The Petitioner must therefore provide evidence showing that the Beneficiary was admitted as a CW-1 worker (or otherwise granted CW-1 status) during fiscal year 2015 (October 1, 2014 – September 30, 2015) and "during each of fiscal years 2016 through 2018."

In support of its claim that the Beneficiary qualifies as a long-term worker, the Petitioner provided:

- Form I-797A Approval Notice granting the Beneficiary an extension of CW-1 status from July 27, 2014, to July 26, 2015;
- Form I-797A Approval Notice granting the Beneficiary an extension of CW-1 status from July 27, 2015, to July 26, 2016;
- Form I-797A Approval Notice granting the Beneficiary CW-1 classification (with notification sent to the U.S. Consulate in Manila),[3] valid from November 17, 2016, to October 1, 2017;
- Form I-797A Approval Notice granting the Beneficiary an extension of CW-1 status from October 2, 2017, to October 1, 2018; and
- Form I-94, Arrival/Departure Record, indicating the Beneficiary was last admitted to the CNMI in CW-1 status on March 8, 2017.[4]

---

[2] *See* "Implementation of the Northern Mariana Islands U.S. Workforce Act of 2018", 85 Fed. Reg. 29264 (May 14, 2020).
[3] This approval notice (issued on November 21, 2016) states that USCIS determined the Beneficiary was not eligible for the requested extension of status. Government records indicate that the Beneficiary departed the CNMI on October 27, 2016, obtained a CW-1 visa at the U.S. Consulate in Manila, and returned on March 7, 2017.
[4] The Petitioner also submitted copies of subsequent USCIS approval notices granting the Beneficiary extensions of CW-1 status for the periods October 2, 2018, through October 1, 2019; October 2, 2019, through October 1, 2020; October 2, 2020, through October 1, 2021; and October 2, 2021, through October 1, 2024.

SCOPS issued a request for evidence (RFE) advising the Petitioner that the initial evidence did not demonstrate the Beneficiary's eligibility as a long-term worker because he "was not admitted or otherwise granted status (change to CW-1 status or extended CW-1 status as a CW-1 nonimmigrant) during fiscal year 2016 (October 1, 2015, to September 30, 2016)." The RFE instructed the Petitioner to provide a copy of a Form I-94, Arrival/Departure record, showing the Beneficiary had an admission during fiscal year 2016 or a USCIS approval notice showing the Beneficiary was granted CW-1 status during that fiscal year.

In response to the RFE, the Petitioner asserted that SCOPS had misinterpreted the statutory language pertaining to long-term workers at 48 U.S.C. § 1806(d)(7)(B). The Petitioner contended that, based on the plain language of the statute, "if the worker was in approved CW-1 status at any time in ("during") each of the requisite fiscal years, the beneficiary qualifies as a long-term worker." In addition, it maintained that "the notice or approval date and exact duration of status are irrelevant; the only relevant dates are the period of authorized status coinciding with at least some portion of each of the requisite fiscal years." The Petitioner stated that the previously submitted approval notices established the Beneficiary's eligibility during each fiscal year, and provided the following table illustrating its interpretation of the statute:

| Fiscal Year | Receipt Number | Validity |
|---|---|---|
| 2015 | WAC1419250733 | 07/24/2014 to 07/26/2015 |
| 2016 | WAC1516351185 | 07/27/2015 to 07/26/2016 |
| 2017 | WAC1620250386 | 11/17/2016 to 10/01/2017 |
| 2018 | WAC1714153268 | 10/02/2017 to 10/01/2018 |
| 2019 | WAC1825350882 | 10/02/2018 to 10/01/2019 |

Finally, the Petitioner asserted that SCOPS had "arbitrarily ignore[ed] [the Beneficiary's] actual FY 2015 admission and appl[ied] his FY 2016 admission to FY 2015 so as to artificially create a gap for FY 2016." It resubmitted each of the approval notices referenced above.

SCOPS denied the petition, concluding the Petitioner did not demonstrate the Beneficiary's eligibility as a long-term worker because it did not demonstrate that he was "admitted or otherwise granted status, as a CW-1 nonimmigrant during fiscal year 2015, and during every subsequent fiscal year through fiscal year 2018," as required by 8 C.F.R. § 214.2(w)(1)(viii). SCOPS acknowledged the Petitioner's arguments in response to the RFE but disagreed with its interpretation of the statutory and regulatory definitions of "long-term worker."

SCOPS' decision emphasizes that "determining which fiscal year a petition falls under is based on the approved validity start date," noting that a single approved petition "cannot cover two fiscal years at once" for purposes of demonstrating a beneficiary's eligibility as a long-term worker. As such, SCOPS observed that the chart the Petitioner provided "does not accurately reflect the relevant validity period for each fiscal year." On appeal, the Petitioner contends that the denial was based on an erroneous conclusion of law and fact.

For the reasons provided below, we conclude the Petitioner has not demonstrated the Beneficiary's eligibility as a long-term worker.

3

In its appellate brief, the Petitioner alleges that SCOPS's decision includes factual errors, noting that SCOPS "arbitrarily" considered the Beneficiary's approved petition valid from July 2014 to July 2015 as an admission or grant of status for fiscal year 2014 (October 2013 to September 2014) even though almost 10 months of the authorized admission (i.e., July 2014 to July 2015) were in fiscal year 2015 (October 2014 to September 2015).   It contends that SCOPS made a similar error by considering the approved petition valid from July 2015 to July 2016 as an admission or grant of status for fiscal year 2015 "despite the fact that all but 66 of the 365 days of authorized admission were in FY 2016."   The Petitioner states that SCOPS applied "an imaginary requirement" that "each approved petition is limited, regardless of the duration of authorized stay and employment or the actual beginning and ending dates of admission, to the fiscal year in which the 'validity start date' occurs."

We disagree.   The CW-1 classification is subject to an annual numerical limitation or "cap" that limits the total number of aliens who may be issued CW-1 visas or otherwise granted CW-1 status during a fiscal year.   *See* 8 C.F.R. § 214.2(w)(1)(x).   Therefore, the regulations dictate how USCIS determines under which fiscal year a given approved CW-1 petition falls.   The fiscal year begins October 1 and ends on September 30.   As such, the approved petition granting the Beneficiary an extension of CW-1 status beginning on July 27, 2014, resulted in his counting against the CW-1 cap for fiscal year 2014 and is considered a grant of status during that fiscal year.   Likewise, the petition approving his extension of status with a validity period beginning on July 27, 2015, counted against the fiscal year 2015 CW-1 cap and was a grant of status for that fiscal year.    The following chart, contrary to the chart provided by the Petitioner, accurately summarizes the Beneficiary's previous grants of CW-1 status by fiscal year:

| Fiscal Year | Receipt Number | Validity |
|---|---|---|
| 2014 (10/01/2013 to 09/30/2014) | WAC1419250733 | 07/24/2014 to 07/26/2015 |
| 2015 (10/01/2014 to 09/30/2015) | WAC1516351185 | 07/27/2015 to 07/26/2016 |
| 2017 (10/01/2016 to 09/30/2017) | WAC1620250386 | 11/17/2016 to 10/01/2017 |
| 2018 (10/01/2017 to 09/30/2018) | WAC1714153268 | 10/02/2017 to 10/01/2018 |
| 2019 (10/01/2018 to 09/30/2019) | WAC1825350882 | 10/02/2018 to 10/01/2019 |

The Petitioner similarly maintains that neither the statute nor the regulation at 8 C.F.R. § 214.2(w)(1)(viii) require approved petitions with a "validity [start] date" in each fiscal year between 2015 and 2018 to demonstrate a beneficiary's eligibility for CW-1 long-term worker status.   Rather, the Petitioner argues that the statute "plainly states that a worker need only have been 'admitted' in CW-1 status sometime 'during' fiscal year 2015, and 'admitted' in such status at some time in each of the subsequent fiscal years 2016, 2017, and 2018."   The Petitioner further contends the statute "does not require a separate grant of status in each fiscal year when the period of admission extends from one fiscal year into another."

While the statute and regulations do not include a reference to a "validity start date," they do require evidence that a CW-1 long-term worker has been "admitted" or "granted status" during *each* relevant fiscal year.   Therefore, the definitions of "long term worker" do not require, as argued on appeal, simply showing that a beneficiary was in the CNMI in CW-1 status for some portion of each year between 2015 and 2018, without regard to any specific dates.   The Petitioner's suggestion that the same approved petition extension should be considered a grant of status applied to one fiscal year for

4

purposes of the CW-1 numerical limitation and be deemed an "admission" during a subsequent fiscal year for purposes of establishing the Beneficiary's eligibility as a long-term worker is not persuasive.

Accordingly, SCOPS did not err by concluding that the Beneficiary's approved CW-1 petitions with validity periods beginning in July 2014 and July 2015, must be considered grants of CW-1 status in fiscal years 2014 and 2015, respectively. Further, the Beneficiary's approved CW-1 extension petition with validity dates from July 2015 to July 2016 is, by regulation, a grant of CW-1 status for fiscal year 2015; it cannot be considered a grant of CW-1 status that occurred in or during fiscal year 2016.

The Petitioner claims that the Beneficiary's approved fiscal year 2015 petition should nevertheless be considered an "admission" during fiscal year 2016 because its validity *extended* through July 2016. It discusses the meaning of the term "admitted" as it pertains to long-term workers under 49 U.S.C. § 1806(d)(7)(B). The Petitioner acknowledges that section 101(a)(13)(A) of the Act defines "admission" and "admitted" as "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." The Petitioner does not claim, and the record does not establish, that the Beneficiary was "admitted" to the CNMI, as that term is defined in the statute, during fiscal year 2016. Rather, the Petitioner claims that the term admitted, "in practice," has "a much broader meaning relating to acquisition and maintenance of status," and that "it is clearly this much broader sense that Congress had in mind," when the Workforce Act was enacted. Specifically, it argues that Congress clearly intended this "broad, expansive meaning because the narrow meaning of the strict statutory definition . . . would require workers to depart the CNMI to a foreign port or place and re-enter the CNMI every fiscal year," noting that this would be "an absurd result."

The Petitioner's assertion that Congress intended USCIS to apply a "broad, expansive meaning" to the term "admitted" that goes beyond the scope of the plain language of the Act's definition of that term is not persuasive. *See, e.g., Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning . . . .").

In implementing the regulatory definition of "long-term worker" at 8 C.F.R. § 214.2(w)(1)(viii), USCIS clarified that a petitioner seeking to file for a "long-term worker" must demonstrate that the beneficiary was "was admitted to the CNMI, or otherwise granted status" in each fiscal year between 2015 and 2018, thereby accounting for those beneficiaries whose approved petitions included a change or extension of status. By doing so, the agency's definition provides that an alien need not have a new *admission* in CW-1 status in every fiscal year to qualify as a long-term worker. However, the regulatory definition of long-term worker plainly requires either an admission (as that term is defined in the statute) *or* a grant of status from USCIS during each of those fiscal years.

Finally, the Petitioner contends that "nothing in the legislative history [of the Workforce Act] even remotely suggests any intent to require anything more than a general continuity of CW-1 employment extending generally across four consecutive fiscal years." It maintains that the Workforce Act's long-term worker provisions "are remedial in that they were intended to shield qualifying workers and their employers from the new 'touchback' requirements imposed by the Act." The Petitioner emphasizes that remedial legislation should be construed broadly, and that SCOPS' approach "frustrates, instead of effectuating, the statutory purpose of encompassing all genuine long-term workers while excluding any with substantial gaps in employment." It asserts that the statute is "meant to be inclusive" and

should not arbitrarily exclude individuals "based on the random circumstance of their "validity start date[s]."

Where, as here, the language of a statute is clear on its face, there is no need to inquire into Congressional intent. *INS v. Phinpathya*, 464 U.S. 183 (1984). Further, the Petitioner has not cited to any specific legislative history that supports its argument that the statutory definition of "long-term worker" was "meant to be inclusive." The expressly stated purposes of the Workforce Act are to increase the percentage of U.S. workers in the total workforce of the CNMI while maintaining the minimum number of non-U.S. workers to meet the demands of the CNMI's economy, to encourage the hiring of U.S. workers, and to provide protections for U.S. workers, ensuring that they are not at a competitive disadvantage for employment compared to non-U.S. workers or displaced by such workers. *See* Pub. L. 115-218, 132 Stat. 1547 (2018). While the Workforce Act and the implementing regulations provide for certain advantages applicable to long-term workers, there is no indication that Congress intended for that category to include as many existing CW-1 workers as possible, given the Workforce Act's overall purpose to encourage the hiring and protection of U.S. workers in the CNMI.

For the reasons discussed, the Petitioner has not established that the Beneficiary "was admitted to the CNMI, or otherwise granted status, as a CW-1 nonimmigrant during fiscal year 2015, and during each of fiscal years 2016 through 2018," as required by 8 C.F.R. 214.2(w)(1)(viii). SCOPS correctly determined that the Petitioner was neither admitted nor otherwise granted CW-1 status during fiscal year 2016.

As acknowledged by SCOPS, the record reflects that USCIS previously granted the Beneficiary a three-year extension of his CW-1 status as a long-term worker for the period October 2, 2021, through October 1, 2024. Officers are not bound to approve subsequent petitions or applications seeking immigration benefits where eligibility has not been demonstrated strictly because of a prior approval. Specifically, deference to prior approvals should not be granted where there the previous approval involved a material error. *See generally* 2 USCIS Policy Manual A.4(B)(1), https://www.uscis.gov/policy-manual/volume-2-part-a-chapter-4. Here, SCOPS' prior determination that the Beneficiary qualified as a long-term CW-1 worker under 8 C.F.R. § 214.2(w)(1)(viii) involved a material error.

## III. CONCLUSION

The Petitioner has not established that the Beneficiary qualifies as a long-term worker under the applicable statute and regulations. Accordingly, the petition will remain denied.

**ORDER:**     The appeal is dismissed.

**NOTICE:** This constitutes the final decision in this matter. The filing of a motion will not postpone the effect of the decision. 8 C.F.R. § 103.5(a)(1)(iv). Aliens who are not lawfully present, or otherwise inadmissible or deportable, may be subject to the commencement of removal proceedings under section 240 of the Act through the issuance of a Form I-862, Notice to Appear. Those proceedings may result in their removal from the United States and possible ineligibility for future visas or other immigration benefits.